[Civ. No. 1994.   Third Appellate District.—May 29, 1919.]

THOMAS HORAN et al., Respondents, v. CONSOLI-DATED ST. GOTHARD GOLD MINING COMPANY (a Corporation), Appellant.

[1] ACCOUNTING — EQUITY — JURISDICTION — RELIEF.—While courts of law and equity are possessed of concurrent jurisdiction in matters of account and accounting, when a court of equity once acquires jurisdiction upon equitable grounds it will proceed to do complete justice and administer full relief to this end, will order an account-

ing, and will settle the whole controversy, even to the extent of adjudicating matters of purely legal cognizance.

[2] ID. — RETENTION OF PERSONAL PROPERTY — ITEM OF ACCOUNT — PLEADING.—In this action in equity for an accounting in connection with the completion of a contract for the construction of a flume, the allegations in the complaint charging the retention by the defendant of certain horses, harness, and wagon delivered by the plaintiffs to the defendant to be used by it in fulfilling the terms of the contract, merely involved the statement or setting forth of certain items in the account between the parties as to which an accounting was asked.

[3] ID.—DAMAGES FOR PROPERTY NOT ACCOUNTED FOR.—In such an action, the horses, wagon, and harness constitute a part of the account between the parties as to which an accounting is sought, and, it being a suit in equity for an accounting, it is proper to allow damages as an essential element of the accounting, if it is made to appear that the property itself cannot be accounted for.

[4] ID. — SUFFICIENCY OF PLEADING — CONVERSION.—While property which is a part of the account between the parties may have been converted by one of the parties, it is not necessary in such case in an equitable action for an accounting to aver facts essential to the statement of a cause of action in conversion.

[5] ID. — SUFFICIENCY OF EVIDENCE — DAMAGES — FINDINGS.—In this action for an accounting, wherein the plaintiffs alleged that the defendant had converted to its own use certain horses, harness, and wagon, which constituted items in the account, the evidence was sufficient to warrant the findings of the trial court as to the conversion of the property and the damages suffered by the plaintiffs for the detention and conversion thereof.

[6] ID.—DUTY TO RETURN PROPERTY—FAILURE—CONVERSION—DAMAGES.—Where the defendant in such action in accounting was under the duty, upon completion of the contract, to return the horses, harness, and wagon to plaintiffs, its failure to do so, whether the cause of such failure was that it had sold the property or itself wrongfully retained possession of it, amounted in legal effect to a conversion; and it having failed to account for the same, it was within the right and power of the court to make an allowance for their reasonable value as damages.

APPEAL from a judgment of the Superior Court of Nevada County. George L. Jones, Judge. Affirmed.

The facts are stated in the opinion of the court.

Searls & Searls and tum Suden & tum Suden for Appellant.

J. M. Walling and E. H. Armstrong for Respondents.

HART, J.—In December, 1911, plaintiffs and one Murphy contracted to build a flume in Nevada County for the defendant to furnish water to its mine, for which they were to receive twenty-six thousand dollars. The contractors failed in their undertaking, after having drawn nearly half the contract price on account, leaving creditors to the extent of $6,213.72, with less than one-third of the flume completed. On the eighteenth day of November, 1912, a new agreement was entered into between the parties hereto, under which defendant agreed to complete the flume, applying so much of the unpaid balance of the contract price as was necessary for the purpose, the remainder, if any, to be applied, first, to the payment of the debts incurred by the contractors, the balance, if any, to be paid to the contractors, the defendant to use in such completion all tools, machinery, supplies, and lumber on hand provided or used by the contractors in connection with said contract. The flume was completed in September, 1913, at an expense of over twenty thousand dollars, leaving nothing for the creditors or the contractors.

In June, 1914, plaintiffs brought this action, alleging a number of defaults and violations of the supplemental contract on the part of defendant, praying for an accounting; for judgment for any credits that may be found due plaintiffs on such accounting; "for such other and further relief in the premises as may seem meet and agreeable to equity"; and for costs.

The trial of the case began on June 12, 1917, before the court without a jury, and, on March 25, 1918, the court made the following findings: That, by virtue of said supplemental agreement of November 18, 1912, plaintiffs assigned to their creditors all rights to any money or damages that might thereafter accrue in their favor from or against defendant to the extent of $6,213.72; that plaintiffs were not entitled to recover against defendant any sum unless the amount of damage accruing in favor of plaintiffs under said contract should be found to be in excess of said sum; that no sum amounting to $6,213.72 is shown to have accrued in favor of plaintiffs; that, in accordance with the terms and conditions of said contract, "defendant received from plaintiffs two horses, harness, and wagon to be used

by defendant in connection with the construction and completion of said flume, which said horses and wagon were to be returned to plaintiffs after such completion; that defendant failed to return the same or any part thereof and subsequently converted the same to its own use to plaintiffs' damage in the sum of five hundred dollars." It was then found that under said contract defendant received from plaintiffs a sawmill and equipments which, after defendant had completed the manufacture of lumber thereat, plaintiffs were at liberty to have taken possession of.

Judgment was entered against defendant for the sum of five hundred dollars and for costs, amounting to $263.30. The appeal is by defendant from said judgment.

It is first contended by appellant that, as the action was solely one for an accounting and there was no allegation in the complaint of conversion, there should have been rendered no judgment for conversion.

In its answer defendant denied "that it received from the plaintiff two horses, harness, and wagon"; denied "that defendant has or does now retain the said horses, harness, and wagon"; denied "that the plaintiffs are damaged thereby in the sum of five hundred dollars or in any sum or at all."

1. No question is here raised as to the propriety of the remedy by bill for an accounting between the parties hereto. While by the supplemental contract a sort of novation was invoked, yet under said agreement the plaintiffs were still interested in the contract and the results thereof, and a trust or confidential relation was thereby created between them.

[1] While courts of law and equity are possessed of concurrent jurisdiction in matters of account and accounting, this is, concededly, a suit in equity for an accounting, and it is the settled rule that "when a court of equity once acquires jurisdiction upon equitable grounds it will proceed to do complete justice and administer full relief to this end, will order an accounting, and will settle the whole controversy, even to the extent of adjudicating matters of purely legal cognizance." (Ency. of Law & Pr., p. 418; see, also, Pomeroy's Equity Jurisprudence, sec. 255; *Smith v. 49 & 56 Quartz M. Co.*, 14 Cal. 242, 248; *California Raisin Growers' Assn.* v. *Abbott et al.*, 160 Cal. 601, 607,

[117 Pac. 767].)   The obvious object of the rule as it is
so stated is to prevent a multiplicity of suits in those cases
where, as to the same parties or parties united in interest
by a common tie (although one may sue on behalf of him-
self and others), there are several different actions, even
though different in nature, depending upon similar facts
and circumstances, and involving the same legal questions,
so that the decision of one would virtually be a decision of
all the others.   (1 Pomeroy's Equity Jurisprudence, secs.
254, 255.)

[2]   Here the allegations in the complaint charging the
retention by the defendant of certain horses, harness, and
wagon delivered by the plaintiffs to the corporation to be
used by it in fulfilling the terms of the contract merely
involve the statement or setting forth of certain items in
the account between the parties as to which an accounting
is asked.   While the complaint in effect charges a conver-
sion of the property, the action is obviously not one in
conversion.   The allegation is, as to those items of the
account, as will be observed, that the defendant received
from plaintiffs said property "to be used by said defendant
in connection with the construction and completion of said
flume," and that defendant still retains said horses, etc., to
the damage of plaintiffs, etc.   This allegation in this action
must be construed simply to mean that there is certain
property which belongs to the account between the plain-
tiffs and the defendant which, among other items, should
be accounted for by the defendant in the proceeding.   We
cannot perceive that the allegation would be any different
if the subject thereof were money received by the de-
fendant as compensation for executing and completing the
terms of the contract or if it were money wrongfully paid
out or retained by the defendant.   The allegation as to the
damage which the plaintiffs therein assert that they have
sustained by reason of the retention of the property men-
tioned involves merely the statement of the value of the
property, which is not only a proper but a necessary fact
to be stated in an action for an accounting to meet the
possible contingency that the party charged with having
possession of the assets of which the accounting is asked
has disposed of or in some way divested himself of such

41 Cal. App.—22

possession and is, therefore, in no position to account for the property in kind. [3] The horses, wagon, and harness constituted a part of the account between the parties as to which an accounting is sought, and, this being a suit in equity for an accounting, it was, as above indicated, proper herein to allow damages as an essential element of the accounting, if it was made to appear that the property itself could not be accounted for. (1 Cyc., p. 408, and cases cited in footnote.)

[4] It is obviously true that while property which is a part of the account between the parties may have been converted by one of the parties, it is not necessary in such case in an equitable action for an accounting to aver facts essential to the statement of a cause of action in conversion, and, therefore, the cases cited by counsel for defendant, among which are *Triscony* v. *Orr*, 49 Cal. 612, and *Edwards* v. *Sonoma Valley Bank*, 59 Cal. 136, are not in point here. Those cases did not involve an accounting, but were strictly actions in trover for the conversion of certain property and the complaints were held to be wanting in facts sufficient to state such a cause of action.

[5] 2. It is next contended that there is no evidence which supports the finding that the defendant converted the horses, harness, and wagon. This contention cannot be sustained.

The defendant admitted receiving into its possession the horses, etc., in question, with other equipments owned and used by the plaintiffs in the work of constructing the flume. It was further admitted by the president of the defendant that he shipped the two horses to the city of San Francisco and there sold them for the sum of one hundred dollars. There is no testimony showing definitely what became of the harness and wagon. The plaintiffs testified that they never received back the last-mentioned property and their testimony as to that was not contradicted. The plaintiffs further testified that the horses, harness and the wagon were reasonably of the aggregate value of $550. They said that the horses were young—about eight years old—and in excellent physical condition. This testimony was sufficient, if believed by the court, as evidently it was, to warrant the finding made by the court that the damages suffered by the plaintiffs for the detention and conversion of the horses,

harness, and the wagon amounted to the sum of five hundred dollars. Much stress, however, is laid upon the statement made by one of the plaintiffs, when testifying, that he did not care whether the horses in question had also died, two of their other horses let to defendant to be used in the construction of the flume having died during the progress of the work. The inference from that statement is, it is assumed, that the plaintiffs regarded the horses in question as of no substantial value. But we cannot say that such is necessarily the inference to be drawn from the said statement. At any rate, it was for the trial court to draw its own inferences from the testimony, and as to the statement in question, it appears that that court attached to it no significance in connection with the determination of the value of the horses or the damages resulting from their conversion. We must so assume from the findings.

Emphasis is also put upon the testimony of the defendant's witnesses that, after the completion of the contract, the possession of the horses, wagon, harness, and other equipments was available to the plaintiffs, and that all the said property would have been delivered to them if they had called for it. But the fact remains that the property was not turned over to the plaintiffs and no explanation was given why it was not, other than that above indicated, viz., that the plaintiffs did not themselves take possession of it. There is no satisfactory showing that the plaintiffs knew when the work of construction was completed and the further use of the property by the defendant became unnecessary.

[6] Counsel for appellant also emphasize the fact that there is no testimony showing or tending to show that the harness and the wagon were sold or converted by the defendant. The company's president testified that, as far as he knew, the harness and the wagon "were still at the mine." But it is immaterial, in our opinion, whether the harness and the wagon in question were or were not sold by the defendant. It was not denied by the president of the company or any other witness connected with the defendant that they were either in the possession of the defendant or had been disposed of by it. It was, therefore, the duty of the defendant to account for said property in this action, and, it having failed to do so, it was within

the right and power of the court to make an allowance for their reasonable value as damages. It was undoubtedly the duty of defendant, upon completion 'of the contract, to return the horses, the harness, and the wagon to the plaintiffs, and its failure to do so, under the circumstances of this case, amounted in legal effect to a conversion of said property, whether the cause of such failure was that defendant had sold the property or itself wrongfully retained possession of it.

We have discovered no substantial reason for disturbing the judgment, and it is therefore affirmed.

Chipman, P. J., and Burnett, J., concurred.